## Susquehanna Mutual Fire Insurance Company *versus* Swank.

1. Where one signs an application for insurance on one of several different plans of insurance on which the company does business; receives a policy in accordance with the application; gives a premium note in accordance with the policy, and retains the policy for a long period without objection to the company; he cannot afterwards set up, as a defence to an action by the company to recover an assessment duly made during the life of the policy, that by a mutual mistake of the agent and himself the policy was upon a different plan from that which he originally verbally requested, and which he supposed he had received.

2. Where one signs an application for insurance, without reading it, and subsequently accepts and retains a policy in accordance with the application, without reading the policy, parol testimony is inadmissible, on his behalf, of representations made by the agent, prior to contract, to contradict or to enable him to escape liability from the terms of the policy.

3. Returning a policy of insurance to the agent of the company who effected the insurance, whose employment was merely to solicit insurance, is not a surrender of the policy to the company, and does not relieve the insured for liability for assessments.

4. Where one accepts and retains a policy of insurance, thereby enjoying its protection, he cannot repudiate his liability for assessments thereunder on the ground that he was under a mistake as to the character of the policy.

6 OUTERBRIDGE—2

[Susquehanna Mut. Fire Ins. Co. *v.* Swank.]

5. An instrument may be reformed in cases of fraud, accident or mistake, but where the mistake was the result of supine negligence of the party, who sleeps upon his rights until other duties and responsibilities have grown up, the law will not help him.

December 7th 1882.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Somerset county:* Of July Term 1882, No. 245.

Assumpsit, by the Susquehanna Mutual Fire Insurance Company against Josiah Swank, to recover the amount of an assessment made upon a premium note signed by defendant, upon his receiving a policy of fire insurance on the "assessment plan" in the plaintiff company.    Plea, non-assumpsit, and special pleas.

The defence, briefly stated, was, that the defendant and Hicks, the agent of the company through whom he effected the insurance, did not intend that the policy should be on the "assessment plan," but on the "annual interest plan," on both of which plans the company did business; but that the agent was misled by the general agent of the company and thereby unwittingly misled the defendant; that by reason of such mutual mistake the defendant never assented to the contract as set forth in the application and policy, but was deceived by misrepresentations of the agent, and although he accepted the policy issued on the assessment plan, without knowledge that it was on that plan, yet he did not ratify it, but after discovering the mistake returned it to the agent who sent it to the company, which refused to cancel it.

The facts of the case are more fully detailed in the charge of the court below, and in the opinion of this court, infra.

The testimony of the agent, Hicks, who corroborated the defendant's testimony to the above effect, was admitted under objection and exception, and the court subsequently refused to withdraw it from the jury.

The plaintiff presented points, in substance, that the defendant was bound by the terms of the application signed by him, and by the policy which he accepted and retained without objection until after assessment made; that representations made by the agent prior to and at the time of the application and delivery of the policy were inadmissible to contradict their terms; and that the fact that the defendant returned the policy to the agent, in the absence of evidence that the company accepted its surrender, did not relieve the defendant from liability to pay the assessment in suit.

The court answered the points thus: "The plaintiff's points, so far as they are not affirmed in the charge, are refused."

The following are the material portions of the charge of the court :—

" The application and the policy constitute the contract if any contract was in fact made. Courts of equity relieve in cases of fraud, accident or mistake, but when the party has signed a written instrument by mistake, relief will only be granted where the evidence is clear, distinct and positive that a plain mistake was made. Mistake is some unintentional act, omission or error arising from ignorance, surprise, imposition or misplaced confidence. But equity will not relieve when the party was negligent. One must use reasonable diligence to inform himself. Where there was an undue advantage taken and neither party intended what had been done, there may be relief. And mistakes may be relieved against in policies of insurance even after losses have taken place if justice requires it. It was therefore competent in this case for the defendant to show that both the agent and himself intended to effect this insurance under the plan called the annual interest plan, and that by a mutual error the application of the assessment plan was used. . . .

This is not a case where the insured seeks to reform the contract on the ground of mistake, or seeks to recover on the contract. It is a case where he alleges there never was a contract. This is a case where, as is alleged, the general agent, specially empowered by the company to travel and appoint county agents, represented that this was not a mutual company alone, but had a class in which they insured on the annual interest plan, and the insured on that plan paid nothing except the annual interest on his premium note, and the allegation is that there was a fraud in fact perpetrated by the general agent upon Hicks and by Hicks unintentionally on the defendant, and the question is, has Swank the right to disown the contract and have his notes rescinded ? Being induced by this false representation, if you so find, as we regard the law, he was not in fact ever a member of the company and he had not agreed to become such. He contracted on the belief and understanding that he was not going into the company as a member, but that it was a company that had the power to insure him for an annual cash payment of $19.80. Swank was therefore not bound to know the by-laws and is not chargeable with knowledge of them. In point of fact, as it is alleged, he didn't know any by-laws were in existence.

" Was he guilty of negligence in signing the application on Hick's representation ? Negligence is want of care according to the circumstances. Ordinarily a careful man would read an application before signing. But he had full confidence in Hicks, with whom he had insured for twenty years. Hicks was himself deceived by the general agent and by the printed instruc-

[Susquehanna Mut. Fire Ins. Co. *v.* Swank.]

tions as to the annual interest plan, and so became the un-conscious means in the hands of this company in deceiving Swank. Neither Hicks nor Swank read the application nor the policy when first received. Hicks swears Wesley told him it made no difference what form of application he used, whether the annual interest or the assessment plan. Hicks testifies he declined to take the agency of the company as a mutual company, and that then Wesley explained to him the annual interest plan just as he had explained it to Swank, and that he represented to Swank there would be no assessment. Very soon after the policy, came the notice to Hicks of the twenty-fourth assessment of July 1877, and he then discovered the mistake and that he had misled Swank. Swank at once said there was fraud or mis-take, and returned the policy to Hicks and refused to have any connection with the company. He paid the twenty-fourth assessment under protest to avoid trouble, and was willing to lose that and the $19.80 paid at the time of the application.

"[The facts of the case are for your determination and we leave them to you but they do not seem to be disputed. The plaintiff's counsel relies upon his view of the law. We think the case differs from that he cites in that it is not an effort to reform the contract and hold to it as reformed but is an allega-tion that there never was a contract; that the defendant never assented but was deceived by misrepresentations, against which he could not have avoided himself by the use of reasonable diligence and that he never ratified it, but promptly dismissed it and handed back the policy, and that he is entitled to relief in equity, and that the plaintiff has no right on the facts, if you find them to be so, to recover in this action,] even if the assess-ment had been made on the premium note on the amount agreed upon as such, and called a premium note on the policy in accordance with the requirements of the by-laws."

Verdict for the defendant, and judgment thereon. The plaintiff took this writ of error assigning for error the admission of the testimony of the agent, Hicks, and the refusal of the court to withdraw the same from the consideration of the jury; the qualified refusal of his points without separate answers thereto; the portion of the charge above quoted in brackets, and the whole charge, wherein "undue weight was given to the testimony of Hicks and the defendant, and the general current of which tended to mislead the jury as to the true point of inquiry in the case."

*Valentine Hay* (with him *Samuel Gaither* and *Fleming & McCarrell*), for the plaintiff in error.—The court below erred in omitting to give distinct answers to our several points: Act of March 24th 1877, P. L. 38 ; Tenbrooke *v.* Jahke, 27 P. F. S.

396 ; Hood v. Hood, 2 Grant . 235 ; Slaymaker v. St. John, 5 Watts 27 ; Noble v. McClintock, 6 W. & S. 58. The parol testimony to contradict the terms of the application and policy, was inadmissible : Keener v. Bank, 2 Barr 239 ; Hackney v. Ins. Co., 4 Barr 185 ; Martin v. Berens, 17 P. F. S. 463. There was no " mistake " in the sense in which mistake is a ground of relief in equity. Moreover, the defendant did not seek to reform the contract, but to escape all liability. The company was no party to the alleged misrepresentations, and Swank by accepting and retaining the policy without objection, and by paying one assessment thereon, enjoyed the protection of the policy, and estopped himself from denying liability on future assessments. The return of the policy to Hicks was not a good surrender to the company. Hicks was only an agent to solicit insurance, and could not destroy the relation between the company and the insured : Buckley v. Columbia Ins. Co., 2 Nor. 299. The tenor of the entire charge was partial, and tended to mislead the jury : Bovard v. Christy, 2 Harris 267 ; Penna. R. R. v. Berry, 18 P. F. S. 279 ; Gregg v. Jamison, 5 P. F. S. 468 ; Penna. R. R. Co. v. Berry, 18 P. F. S. 278 ; Rosenberger v. Ins. Co., 3 W. N. C. 16.

W. H. Koontz and H. S. Endsley, for the defendant in error, were not present at the argument. In their printed brief, which was submitted to the court, they contended that the plaintiff company could not avail themselves of the misrepresentations or mistake of their soliciting agent, caused by the misrepresentations of their general agent, and made in the scope of his employment, whereby the defendant was lured into accepting a policy on the assessment plan, which he expressly told the agent he did not want, instead of one on the annual interest plan which he did want, and which he supposed he had received, until after he received notice of assessment, when he paid that assessment under protest, and promptly returned the policy to the agent who sent it to the company, before the losses were incurred which the assessment in suit was levied to meet : Eilenberger v. Ins. Co., 7 W. N. C. 363.

Mr. Justice PAXSON delivered the opinion of the court, December 30th 1882.

This was a suit against a member of a mutual fire insurance company to recover an assessment regularly made to cover losses and expenses incurred during the life of the policy. The policy was issued to the defendant on June 9th 1877 in pursuance of an application in writing made by the defendant on June 1st 1877. The policy was sent to and accepted by him. In August or September of the same year an assessment

of $24 was made upon his policy, which he paid under protest. The assessment for which this suit was brought was made September 13th 1878 for the sum of $39, and defendant notified to pay the same on September 16th of the same month.

Payment was resisted upon the ground that the defendant had been told by the company's agent at the time he applied for insurance, that he would not be liable to any assessments; that he, the agent would take his application upon "the annual interest plan," under which no assessments would be made. His testimony and that of the agent to this effect was admitted in evidence against the objection of the plaintiff. The application was for insurance on the ordinary assessment plan. It was in writing, signed by the defendant, witnessed by the agent. It contains this distinct promise to pay assessments : " For value received and in consideration of a policy of insurance to be issued by the Susquehanna Mutual Fire Insurance Company of Harrisburg, Pa., upon the approval of my application for insurance in said company, of this date, I promise to pay the said company such sum or sums of money, and at such time or times, as the board of directors of said company may, in conformity with the rules and by-laws require, payable within thirty days after notice."

The insurance policy sent to and accepted by the defendant recited the giving of a premium note, and his agreement to pay assessments.

The defendant retained the policy without objection made to the company until October 14th 1878, which was about one month after a second assessment had been made. It is true he sent the policy to the agent in September or October 1877, and informed him he ought not to pay any more assessments. The agent sent it to the company on October 14th 1878. On October 17th the defendant was notified by the company that they held the policy subject to his order; that they would not cancel it nor surrender his note.

The sending of the policy to the agent was not a surrender to the company : Buckley v. Columbia Insurance Company, 2 Norris 299. The agent testifies : " My authority was to receive applications and send them to the company." It is manifest therefore, that the defendant retained his policy without objection made to the company from its reception in June 1877, until October 14th 1878.

There is no room for the allegation that a fraud was practiced upon him by reason of which he was induced to sign the application. The most that can be said is that he wanted an insurance upon the " annual interest plan " and was told by the agent that his policy would be of that character. It appears that the company insured in three modes, viz : 1. The assess-

ment plan; 2. The annual interest plan; and, 3. The deposit plan. Assuming all that is claimed by the defendant it does not amount to a defence. The application which he signed was as plain as language could make it, and called for the assessment plan. If he read the paper when he signed it he must have known its character. If he signed the application without reading it his act was inexcusably negligent. In such case there was the more necessity for reading his policy when he received it. Had he done either he would have seen that he was insured upon the assessment plan, and the mistake, if any, could and doubtless would have been corrected. But he retained it, as before stated, and did not notify the company for sixteen months. During all of this time he had the benefit of the insurance. In case of loss the company would have been liable. Not only so, other parties may have insured upon the faith of his liability to assessment upon his premium note.

An instrument may be reformed in cases of fraud, accident or mistake, but where the mistake was the result of the supine negligence of a party who sleeps upon his rights until other duties and responsibilities have grown up, the law will not help him.

We sustain all of the assignments of error.

Judgment reversed and a venire facias de novo awarded.